UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re:  ANGELA M. KLINE, | : | Case No. 14-12815REF |
| Debtor | : | Chapter 7 |
| ------------------------------------------------- | | |
| ALAN B. ZIEGLER, | : | Adv. No. 14-227 |
| Plaintiff | : | |
| vs. | : | |
| ANGELA M. KLINE, | : | |
| Defendant | : | |

# STATEMENT SUPPORTING ORDER ENTERING JUDGMENT IN FAVOR OF DEBTOR/DEFENDANT AND AGAINST PLAINTIFF

## I. INTRODUCTION

The facts of this dispute are both simple and uncontradicted. In December 2012, Debtor/Defendant was considering her possible need for bankruptcy when she also needed legal representation in certain existing (and it turned out) future domestic relations and family matters. Plaintiff was her state court attorney. He required Debtor to agree that, if she did file for bankruptcy relief, she would not discharge her obligation owed to him for his fees. Debtor

1

agreed. Debtor filed her bankruptcy petition a year and a half later, in April 2014. Her former attorney filed this adversary proceeding in May 2014, seeking to render his legal fees non-dischargeable. Despite her prior, pre-petition agreement, Debtor now opposes Plaintiff's non-discharge demand and filed her answer to his complaint later in May 2014.

In my discussion below, I reject Plaintiff's public policy argument that Debtor's pre-petition waiver of her right to discharge. The precise reverse of his argument pertains here. Public policy requires that I refuse to deny Debtor her discharge of Plaintiff's fees. Furthermore, as discussed below, Plaintiff has not established a critical element in his case (Section 523(a)(2)) by a preponderance of the evidence. Plaintiff presented no evidence that Debtor, when she agreed that Plaintiff's fees would not be discharged, was lying or otherwise misrepresenting her conviction that she would make that happen. To the contrary, the evidence shows that, to the best of Debtor's understanding, she believed that she could and would do as she agreed – waive her discharge of Plaintiff's fees.

For both of these reasons (public policy and failure to prove a critical element of the case), I find for Debtor and against Plaintiff. I will therefore enter judgment in favor of Debtor and against Plaintiff. The ensuing discussion is for the benefit of the parties.

# II. PROCEDURAL AND FACTUAL BACKGROUND

## A. PROCEDURAL BACKGROUND

Debtor filed her petition pursuant to Chapter 7 of the Bankruptcy Code on April 10, 2014. On May 2, 2014, Plaintiff (Debtor's former state court attorney) filed his pro se complaint initiating this adversary proceeding and praying that I determine that the debt owed to him by Debtor for his legal services will not be discharged. Plaintiff alleged in his complaint that I have jurisdiction in this dispute pursuant to 28 U.S.C. §157 and 28 U.S.C. §1334 (I agree) and that the subject matter of this dispute constitutes a core proceeding under 28 U.S.C. §157(6)(2)(1) [sic][1] (I also agree). Debtor consents to Plaintiff's jurisdictional pleadings in her answer.

I issued a more or less standard Pre-Trial Order on June 6, 2014. On June 12, 2014, the parties filed their Joint Jurisdictional Statement, in which they agreed and stipulated, once again, that this adversary proceeding is a core proceeding under 28 U.S.C. §157(6)(2)(1) [sic][2] and that I may enter a final order herein. I conducted the Pre-Trial Conference on August 20, 2014, and set the trial

---

[1] I believe that Plaintiff meant to cite Section 157(b)(2)(B)(I): "Core proceedings include . . . determinations as to the dischargeability of particular debts . . .."

[2] See footnote 1, supra.

3

date for September 24, 2014.[3] During the trial, I ordered the parties to file their post-trial briefs by October 24, 2014. The day after the September 24 trial, I provided counsel with an Order identifying certain cases whose holdings raised an issue that I suggested the parties address in their post-trial briefs. Both parties filed timely post-trial briefs.

## B. <u>FACTUAL BACKGROUND</u>

In December 2012, during Plaintiff's representation of Debtor/Defendant in several pre-bankruptcy family matters, Debtor asked Plaintiff to provide the names of attorneys who were competent in the field of consumer bankruptcy.[4] At the time of the request, Debtor owed certain sums to Plaintiff for prior work. Plaintiff and Debtor both anticipated that Plaintiff would provide to Debtor significant continuing legal services, although they disagree whether Plaintiff quoted a projected fee amount.[5] Plaintiff informed Debtor that Plaintiff could not perform further work for her if her intent was to discharge the debt that

---

[3] Through the Pre-Trial Conference, Plaintiff continued to represent himself. On September 22, 2014, Plaintiff retained bankruptcy counsel, who has represented him from that date through today.

[4] A large portion of this factual background was taken from Plaintiff's recitation of facts in his post-trial brief. These facts are unopposed and are uncontradicted by Debtor.

[5] Some of the work that Plaintiff did for Debtor arose after December 2012 and could not have been contemplated by the parties. The fee that might have been mentioned for legal work pending in December 2012 would clearly have increased upon Plaintiff's provisions of the additional legal services for later events. Because I find for Debtor in this matter, I need not determine the amount of any fee that might be owed at this time. Whether Debtor discharges $24,747.97 as prayed for in the complaint, $22,917.39 as reduced by Plaintiff on the day of the trial, or some other amount is immaterial. Because this is a no-asset Chapter 7 case (all unsecured debt will be discharged), the parties need not establish the amount of whatever claim Debtor owes to Plaintiff.

4

would be incurred in a bankruptcy proceeding. In response, Debtor told Plaintiff that she would not seek to discharge Plaintiff's legal fees in a bankruptcy proceeding.[6]

Specifically, Debtor told Plaintiff that she was very satisfied with his representation of her and other family members,[7] and that she would not seek to discharge Plaintiff's attorney's fees in the bankruptcy proceeding. Subsequently, Debtor did file for protection under Chapter 7 of the Bankruptcy Code, and (properly) listed Plaintiff[8] as a creditor in her schedules.

The legal services rendered by Plaintiff were critical to Debtor. They concerned Debtor's most important interest: Her children. Plaintiff represented Debtor in a custody dispute with her former husband regarding her two sons, and further, Plaintiff represented Debtor regarding certain school disciplinary issues facing one of Debtor's children. In addition, he worked to clear the record of Debtor's child so that the child has the opportunity to go to college.[9]

---

[6] Plaintiff provides this fact in his brief, but it differs from the testimony of both Plaintiff and Debtor at trial. Both testified that Debtor agreed not to include Plaintiff's fees in her schedules of debt so her debt owed to him would not be discharged. Plaintiff now asserts that he is aware that Debtor was obliged by the Bankruptcy Code to list all of her creditors. Although this constitutes a difference in the facts, it is not material to my consideration of this legal dispute. Both parties agree and have argued that the issue at hand is Debtor's agreement, in whatever form, not to discharge Plaintiff's fees.

[7] At no time in this proceeding did Debtor or any other party or counsel disparage the work that Plaintiff did. To the contrary, by all appearances, Plaintiff provided Debtor with entirely appropriate and successful representation in the state court matters in which he represented Debtor and her family.

[8] Plaintiff's facts refer to listing "Defendant" as a creditor at this point in his factual recitation; this is an error. The true fact, rather obviously, is that Debtor listed Plaintiff as a creditor in her schedules.

[9] See footnote 7, supra.

# III. DISCUSSION

As Plaintiff did, I will address the two separate approaches advanced by Plaintiff in his attempt to have the fee owed to him by Debtor rendered non-dischargeable: (1) Public policy and (2) Section 523(a)(2) of the Bankruptcy Code, 11 U.S.C. §523(a)(2). Plaintiff fails in both arguments. Public policy and failure to prove all elements of Section 523(a)(2). My ruling on either or both issues mandates my entry of judgment in favor of Debtor.

## A. PUBLIC POLICY

I will start my analysis with the public policy argument, which I easily reject. Plaintiff argues that the legal services provided to Debtor pursuant to their agreement were absolutely critical to Debtor. No one can reasonably argue that issues of child custody, school disciplinary actions, and other family issues are not of the utmost importance to anyone, Debtor included. Plaintiff then jumps to the next point: Promises to waive discharge of a debt for the provision of such services should be upheld to permit prospective debtors, such as Debtor in this case, to obtain critical services.

Plaintiff's argument presents men with the proverbial slippery slope. The obvious concern with this policy, if adopted, is its destruction of a debtor's

discharge and resultant loss of the "fresh start" that a debtor would face if the policy were adopted. Many matters other than family legal issues are critical to consumers. I venture to say that any cause that leads an individual to obtain legal counsel may be considered critically important. Similarly, any use of the following services/products may very well be important/essential/critical for a consumer: Medical professionals and mediation; faulty furnaces; broken air conditioning; automobile repairs; groceries to feed the family; clothes required for a job or to engage in job hunting; and school tuition are but a handful of examples. If a consumer is confronted with any of these needs and the creditor could require, based on Plaintiff's espoused public policy, that the consumer must promise not to discharge the debt, the uninformed consumer[10] will possibly (or maybe probably or perhaps even certainly) agree.

  Is Plaintiff suggesting that many or most creditors providing essential services in a consumer's life could make this demand and that all such demands would needs be honored? A more thorough roadblock to a debtor's fresh start could not exist.

---

[10]  I decline to go into the issue, raised by neither party, that Debtor's promise to Plaintiff may have created a conflict between them. Perhaps it would have been for the best if Plaintiff referred Debtor to alternative counsel who could advise Debtor about the ramifications of the waiver of the discharge to which she was agreeing. See generally, e.g., Pennsylvania Rules of Professional Conduct, Rule 1.7, Explanatory Comments [10] and [18], and Rule 1.8(a), Explanatory Comments [2] and [3].

To the contrary, the long-held, virtual reverence shown to a debtor's general discharge of debt requires the opposite conclusion -- no such waiver of the right to a discharge can be countenanced. I therefore reject Plaintiff's argument that, as a matter of public policy, Debtor's waiver of the discharge of Plaintiff's legal fees must be enforceable and should be enforced.

Debtor cited a handful of authorities for the proposition that discharging debt is a cornerstone of consumer bankruptcy. Following are Debtor's cites: Collier Bankruptcy Manuel, Section 523.04, pp. ___ (3d ed. Revised); Equitable Bank v. Miller (In re Miller), 39 F.3d 301 (11th Cir. 1994); Boroff v. Tully (In re Tully), 818 F.2d 106 (1st Cir. 1987); and Boyle v. Abilene Lumber, Inc. (In re Boyle), 819 F.2d 583 (5th Cir. 1987).

To Debtor's handful of references set forth in the Colliers Manuel, I add the following decisions, closer to home as it were. These decisions properly exalt the tremendous public policy recognized by courts that uphold discharge except in the relatively rare cases in which the specifically enumerated exceptions in Section 523 apply through a preponderance of the evidence. First, two of the three Third Circuit panel judges recently determined that this Court should proceed with sanction hearings against an attorney who was trying to prevent debtors, his former clients, from obtaining a discharge and a fresh start in Ettinger v. Miller (In re Miller), 730 F.3d 198 (3d Cir. 2013). A year earlier, the Third Circuit Court also

8

listed first the debtors' "fresh start" in life when it described the objectives of the Bankruptcy Code. In re American Capital Equipment, LLC, 688 F.3d 145, 157 (3d Cir. 2012).

Furthermore, as my colleague, Chief Judge Eric L. Frank identified a central purpose of bankruptcy last year:

> One of the Bankruptcy Code's central purposes is to permit honest debtors to reorder their financial affairs and obtain a "fresh start," unburdened by the weight of preexisting debt. . . . Exceptions to discharge are construed strictly against creditors and liberally in favor of debtors. . . .
>
> A creditor objecting to the dischargeability of an indebtedness bears the burden of proof. . . . The creditor must establish the elements under §523(a) by a preponderance of the evidence. . . .

NWI Orthodontics, P.C. v. Bell (In re Bell), 498 B.R. 463, 476-77 (Bankr. E.D. Pa. 2013) (citations omitted). The primacy of the Bankruptcy Code's "fresh start" policy is superior compared to the public policy argued by Plaintiff.

But I'll not stop there in my review of Plaintiff's policy argument. Plaintiff notes in his brief that discharging his fees will render such services impossible to obtain. I disagree. Debtor was already experiencing financial difficulty when she asked Plaintiff to identify a bankruptcy lawyer for her. Rather than providing legal services to Debtor when she was a bad credit risk, Plaintiff could have suggested to her that she file immediately. Had she done so, Plaintiff's

fees would have been post-petition and therefore non-dischargeable. Plaintiff could have resisted any attempt of Debtor to dismiss that case to re-file and thereby attempt to discharge his fees (but that would be an entirely different approach to the issue). A Bankruptcy Court is not obliged to grant a debtor's motion to dismiss a case when the debtor acted in bad faith. Taylor v. Winnecour, 460 B.R. 673, 675 (W.D. Pa. 2011) and In re Soppick, 516 B.R. 733, 744-45 (Bankr. E.D. Pa. 2014), both relying on an extrapolation from the Supreme Court's decision in Marrama v. Citizens Bank of Mass., 549 U.S. 365, 376 (2007).

Finally, in the discussion of public policy I refer to my post-hearing suggestion to the parties that they consider and brief certain cases that related to pre-petition waivers of the right of discharge in a subsequent bankruptcy. Plaintiff provided a well-reasoned discussion of the cases I suggested.[11] He noted that the decisions to which I referred involved pre-petition waivers of discharge of debt that had been created prior to the waivers. I believe that is a difference without a distinction. My analysis of case-law in this Circuit and District confirms that Debtor was not permitted to waive her discharge, even of obligations that arose after her agreement. Following are a handful of cases from this Circuit and District,

---

[11] My Order dated September 25, 2014, referred the following cases to counsel for their consideration: Saler v. Saler (In re Saler), 205 B.R. 737, 744 (Bankr. E.D. Pa. 1997); Alsan Corp. v. DiPierro (In re DiPierro), 69 B.R. 279, 282 (Bankr. W.D. Pa. 1987); Lichtenstein v. Barbanel, 161 Fed. Appx. 461 (6th Cir. 2005); In re Waldo, 417 B.R. 854, 885-87 (Bankr. E.D. Tenn. 2009); Simmons Capital Advisors, Ltd. (In re Bachinski), 393 B.R. 522, 532-34 (Bankr. S.D. Ohio 2008); In re Raczkowski, No. 01-80140, 2002 WL 230770 at *2 (Bankr. M.D.N.C. 2002). Plaintiff addressed these cases; Debtor chose not to do so.

none of which were in the list I provided to counsel. The cases that I will examine, however, cite some of the decisions I suggested.

The Third Circuit Court in <u>Cheripka v. Republic Insurance Company</u> (<u>In re Cheripka</u>), No. 91-3249, 1991 WL 276289 (3d Cir. Dec. 31, 1991) (panel decision), <u>vacated and reh'g en banc granted</u> (3d Cir. Jan. 22, 1992), <u>aff'd without opinion</u>, No. 91-3249 (3d Cir. Feb. 24, 1992), was faced with a pre-petition consent judgment that was said to waive the debtor's discharge of a certain obligation owed to the creditor. The Third Circuit Court ruled as follows:

> Courts considering this issue have consistently held that for public policy reasons, parties may not contract away or otherwise waive their statutory right to seek a discharge of debts under Title 11 in advance of filing a bankruptcy action. <u>Levinson</u>, 831 F.2d at 1296 n.3; <u>In re Ethridge</u>, 80 B.R. 581, 586 (Bkrtcy. M.D. Ga. 1987). Exceptions to the right to discharge, set forth in 11 U.S.C. § 523, are strictly construed in order to further the "policy of affording the debtor a broad discharge and an effective fresh start." <u>In re DiPierro</u>, 69 B.R. 279, 282 (Bkrtcy. W.D. Pa. 1987); <u>see also</u> <u>Ethridge</u>, 80 B.R. at 586; <u>In re Minor</u>, 115 B.R. 690, 693 (D. Colo. 1990). **Indeed, if debtors could waive their statutory right to discharge prior to filing for bankruptcy, creditors could nullify the fresh start provided to debtors by the Bankruptcy Code at the original time of extending credit.** <u>Ethridge</u>, 80 B.R. at 586. While we recognize that the evidence here does not suggest that Michele Cheripka was in any way forced to agree to nondischargeability of her debt, we nevertheless conclude that for policy reasons, **the exceptions to the right to discharge should be strictly construed and should not depend on the voluntariness of the relationship between debtor and creditor.** Based on the foregoing we conclude that the Cheripkas did not waive the issue of dischargeability, and the bankruptcy court was free to make an independent determination of the dischargeability of the Cheripkas' debt to Republic.

1991 WL 276289 at *5 (emphasis added and footnote omitted). The precise public policy that I addressed above -- nullification of the fresh start -- is plainly adopted by the Court in Cheripka .

Bankruptcy Courts have looked to Cheripka as support for negating waivers of other fundamental rights provided in bankruptcy, such as the automatic stay of Section 362 of the Bankruptcy Code, in addition to waivers of discharge. See, e.g., In re Fallon, 244 B.R. 589, 593 (Bankr. E.D. Pa. 2000); In re Madison, 184 B.R. 686, 691 (Bankr. E.D. Pa. 1995).

In a matter sounding quite similar to the question before me, a bankruptcy court in New Jersey considered the waiver of the discharge for a debtor in a domestic relations dispute. Marra, Gerstein & Richman v. Kroen (In re Kroen), 280 B.R. 347, 352 (Bankr. D.N.J. 2002) citing In re Nieves, 246 B.R. 866, 872 (Bankr. E.D. Wis. 2000). The waiver was expressly included in the retainer agreement for legal services between an attorney and his client. When the client later filed bankruptcy, after substantial fees were incurred in the domestic relations dispute, the attorney sued to avoid a discharge of his fees. The court rejected his efforts as potentially circumventing the "fresh start" policy. Discharge waivers, the court predicted, would be wide open.

Chief Judge Eric Frank addressed a domestic relations case Master Settlement Agreement that waived all rights to discharge any obligation under its terms in bankruptcy. In re Miller, 501 B.R. 266, 272 (Bankr. E.D. Pa. 2013). Judge Frank relied on statutory language to support his decision not to entertain the objection to discharge:

> [T]he provision of the MSA providing for a contractual waiver of the Debtor's right to discharge any obligation under the MSA that might otherwise be dischargeable in bankruptcy is unenforceable. The Bankruptcy Code prohibits such a pre-petition waiver. See 11 U.S.C. §524(a)(1) and (2) (subsections of §524(a) describing effect of discharge "whether or not discharge of such debt is waived"); see generally In re Gurrola, 328 B.R. 158, 163 (9th Cir. BAP 2005) (stating, in context of post-discharge conduct asserted to give rise to estoppel that **"the present version of the federal bankruptcy discharge provides an absolute, nonwaivable defense"**).

Id. at 272 n.3 (emphasis added).

For all of the above reasons, Plaintiff's public policy argument must fall. The failure of the public policy argument could stand by itself to support entering judgment against Plaintiff and in favor of Debtor. But even if the public policy somehow provided Plaintiff with support, he failed to prove a critical element of Section 523(a)(2), as I explain below.

# B. SECTION 523(a)(2)(A)

The substantive ground through which Plaintiff attempts to prevent the discharge of his legal fees is Section 523(a)(2)(A), which provides, as is relevant:

> (a) A discharge under … this title does not discharge an individual debtor from any debt * * * (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by --- (A) false pretenses, a false representation, or actual fraud . . ..

11 U.S.C. §523(a)(2)(A).

Plaintiff's case therefore turns on whether Debtor's agreement to waive discharge of her debt to Plaintiff is a false pretense, a false representation, or actual fraud. To obtain relief under Section 523(a)(2)(A), Plaintiff must prove his claim of misrepresentation by a preponderance of the evidence. Greater Pittsburgh Police F.C.U v. Hilley (In re Hilley), 124 Fed. Appx. 81, 82 (3d Cir. 2005).

### 1. False Pretenses

"False pretenses," as used in Section 523(a)(2)(A) is based on conduct, not actual expression. It is conscious deceptive or misleading conduct calculated to obtain, or deprive, another of property. Tehume v. McCormick (In re McCormick), No. 07-16313 & Ad. Pro. No. 07-1868, 2009 WL 3254932 at *3

(D.N.J. Oct. 7, 2009). Another court described false pretense as (1) an implied misrepresentation or conduct that creates and fosters a false impression, (2) any series of events that create a contrived and misleading understanding of a transaction, in which a creditor is wrongly induced to extend money or property to the debtor, and (3) a belief fostered willfully, knowingly, and by design, not the result of inadvertence. Couch v Griffith, (In re Griffith), No. 13-4362 and Adv. No. 13-281, 2014 WL 4385743, at *3 (Bankr. M.D. Pa. Sept. 4, 2014). Plaintiff is not complaining about any individual or series of conduct through which Debtor misled him; he is complaining about her alleged express misrepresentation. In any event, Plaintiff did not prove the elements of a false pretense discharge against Debtor. The "false pretense" leg of Section 523(a)(2)(A) falls.

## 2. False Representation or Actual Fraud

The case law is virtually unanimous in the nature of the application of the burdens of proof and persuasion in disputes such as this. Plaintiff must prove that Debtor intended to deceive him when she made the representation. Griffith, 2014 WL 4385743, at *3. And, as noted above, a creditor objecting to the dischargeability of indebtedness bears the burden of proof to establish the necessary elements. The creditor must establish the necessary elements by a preponderance of the evidence. Bell, 498 B.R. at 476-77.

The elements for false representation and actual fraud are: (1) The debtor made a false representation; (2) the debtor knew the representation was false when it was made; (3) the debtor intended to deceive the creditor or to induce him to act on the representation; (4) the creditor justifiably relief on the representation; and (5) the creditor sustained a loss as a proximate result of the representation. Griffith, 2014 WL 4385743, at *3. Without reviewing the other four elements of misrepresentation/fraud, Plaintiff failed to present any proof whatsoever about the second element. I heard or saw nothing that hinted that Debtor knew her statements about not discharging Plaintiff's fees in a later bankruptcy were false in December 2012. To the contrary, Debtor testified that she did not know that she could not fail to include all creditors in her schedules. Furthermore, Debtor testified that she paid Plaintiff $100/month as part of their deal until she started to fall behind on all of her bills. She was trying to live up to the agreement she had made with Plaintiff.

# IV. <u>CONCLUSION</u>

Plaintiff failed to establish that his public policy argument effectively counters the "fresh start" that bankruptcy promises. The attempted pre-petition waiver of Debtor's right to a discharge falls in the face of the primacy and essential nature of the "fresh start." Plaintiff failed to prove that Debtor knew, when she agreed (in whatever form) that she would not discharge Plaintiff's fees in any later bankruptcy, that such statements were false. The heavy burden placed on any creditor who seeks to avoid the discharge at the foundation of every bankruptcy applies here. I will deny Plaintiff's prayers for relief and I will enter judgment in favor of Debtor/Defendant and against Plaintiff in an appropriate Order to follow.

DATE:  November 20, 2014                              BY THE COURT

                                                     _____
                                                     Richard E. Fehling
                                                     U.S. Bankruptcy Judge